1
2
3
4
5
6
7

8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | LINDA DE SANTOS, | ) Case No.: 1:14-cv-0738 -JLT |
| 12 | Plaintiff, | ) ORDER GRANTING PLAINTIFF'S MOTION |
| 13 | v. | ) FOR PRELIMINARY APPROVAL OF CLASS ) SETTLEMENT |
| 14 | JACO OIL COMPANY, et al., | ) |
| 15 | Defendants. | ) (Doc. 32) ) |

16

17    Plaintiff Linda De Santos requests preliminary approval of the class settlement with Defendants.

18 (Doc. 32)  By and through this motion, Plaintiff seeks: (1) conditional certification of a settlement

19 class; (2) preliminary approval of the settlement terms; (3) appointment of Plaintiff as the class

20 representative; (4) appointment of Shanberg, Stafford & Bartz LLP as Class Counsel; (5) approval of

21 the class notice and related materials; (6) appointment of ILYM Group, Inc., as the claims

22 administrator; and (7) scheduling for final approval of the settlement.  (Doc. 32-3)  Defendants do not

23 oppose the motion for preliminary approval of the class settlement.

24    The Court has considered the proposed settlement agreement between the parties, and the

25 proposed Class Notice and Request for Exclusion Form.  For the following reasons, Plaintiff's motion

26 for preliminary approval of class settlement is **GRANTED**.

27 ///

28 ///

## BACKGROUND

Plaintiff asserts she applied for the Human Resources Manager position with Defendant Jaco Oil Company in March 2014. (Doc. 32 at 16) Plaintiff reports she completed the application online, "had a telephone interview and took several computer proficiency exams, all of which she passed." (*Id.*) In addition, Plaintiff was "asked to fill out a "Credit and Background Check Authorization" form as part of the application process." (*Id.*)

She reports that she "emailed Defendant Jaco on March 26, 2014, to find out the status of her application." (Doc. 32 at 16) That same day, Plaintiff received a response, "from the human resources department representative, Ms. Winkler, stating that she had not been selected for employment and that the position had been filled already by a candidate with a "skill set that more closely matches [Jaco's] needs." (*Id.*) According to Plaintiff, Ms. Winkler did not "indicate whether Plaintiff's consumer report was considered in the decision to deny her employment," but Plaintiff "suspected that there were negative items on her consumer report that she wanted to explain." (*Id.*)

Plaintiff emailed Ms. Winkler on April 9, 2014, requesting a copy of her consumer report and inquiring "whether the report was considered in the decision to deny her employment." (Doc. 36 at 16) Ms. Winkler did not respond, and Plaintiff sent a second inquiry on April 21, 2014. (*Id.* at 17) In reply, Plaintiff received an email from with a copy of her consumer report, but Ms. Winkler did not answer whether it was considered with Plaintiff's application. (*Id.*) Several weeks later, Plaintiff learned Jaco had not yet filled the position for which she had applied. (*Id.*)

On May 16, 2014, Plaintiff initiated this action by filing a complaint against Jaco "individually and on behalf of all others similarly situated," including "other prospective, current, and former employees." (Doc. 1 at 2) Plaintiff alleged Jaco's actions violated the Fair Credit Reporting Act, California's Investigative Consumer Reporting Agencies Act, and California's Consumer Credit Reporting Agencies Act. (*Id.* at 1) Jaco filed its answer on June 16, 2014. (Doc. 7)

According to Plaintiff, in the course of discovery, her attorneys learned that Jaco performed background check services for its affiliated entities, including Fastrip Food Stores, Inc.; Fastrip Food Stores of Fresno, Inc.; Fastrip Financial, LP; Instant Storage, LLC; Brooke Utilities, Inc.; and Wholesale Fuels, Inc. (Doc. 32 at 18) On April 8, 2015, Plaintiff filed a First Amended Complaint in

which she named the affiliated entities as additional defendants in this action. (Doc. 25)

The parties engaged in private mediation with Carl West, who proposed a settlement in the amount of $300,000. (Doc. 32 at 19-20) After accepting the proposal, the parties executed a memorandum of understanding on May 12, 2015. (*Id.*) The parties finalized the proposed settlement on June 10, 2015. (Doc. 32-1 at 57-60.) Thereafter, Plaintiff filed the motion for preliminary approval of class settlement on June 22, 2015 (Doc. 32), which is now pending before the Court.

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement amount not to exceed $300,000. (Doc. 32-1 at 24, Settlement § 2.1)

### I.     Payment Terms

The settlement fund will cover payments to Class Members, including "all applicants who applied for employment with Jaco Oil Company, Fastrip Food Stores, Inc., Fastrip Food Stores of Fresno, Inc., Fastrip Financial, LP, Instant Storage, LLC, Brooke Utilities, Inc., and/or Wholesale Fuels, Inc. and for whom Defendants obtained and/or used a "Consumer Report"[1] during the "Settlement Period." (Doc. 32-1 at 20, Settlement § 1.1) In addition, the Settlement provides for payments to Class Counsel and to the Claims Administrator. (*Id.* at 24-25; Settlement § 2.1) Specifically, the Settlement provides for the following payments from the gross settlement fund:

- The Class Representative will receive up to $5,000;
- Class Counsel will receive no more than $100,000, which equals 33.3% of the gross settlement fund and, and up to $8,500 for expenses; and
- The Claims Administrator will receive up to $12,500 for fees and expenses.

(Doc. 32-1 at 26-27, Settlement § 3; Doc. 32 at 25-26) After these payments have been made, the remaining money – estimated to total $174,000 – will be distributed to Class Members. (Doc. 32 at 25)

The funds to Class Members will be distributed to two different subclasses: class members hired by Defendants ("Group I") and class members who were not hired by Defendants ("Group II").

---

[1] Pursuant to the Settlement, "Consumer Report" includes "any credit, consumer, and/or investigative report as may be applied by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), the Investigative Consumer Reporting Agencies Act, California Civil Code §1786, *et seq*. ("ICRAA"), the Consumer Credit Reporting Agencies Act, California Civil Code § 1785.1, *et seq*. ("CCRAA"), or any other similar state or federal laws." (Doc. 32-1 at 21, Settlement § 1.7)

(Doc. 32 at 24) Class Members are not required to submit claim forms to receive a settlement share, and will be compensated as long as they do not respond to the Class Notice with a request for exclusion. (Doc. 32-1 at 25-26, Settlement § 2.3) Class Members in Group I will receive $50 each, and Class Members in Group II "will receive $350-375, depending on how many class members opt out." (Doc. 32 at 24)

## II. Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, release Defendants from the claims arising in the class period. Specifically, the released claims for Class Members include:

- any and all claims regarding Defendants' alleged failure to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), or other similar state or federal laws, related to or arising from the alleged facts and other claims asserted in, or that could have been asserted in, the operative First Amended Complaint;

- any and all claims regarding Defendants' alleged failure to comply with the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786, *et seq.* ("ICRAA"), or other similar state or federal laws, related to or arising from the alleged facts and other claims asserted in, or that could have been asserted in, the operative First Amended Complaint;

- any and all claims regarding Defendants' alleged failure to comply with the Consumer Credit Reporting Agencies Act, California Civil Code § 1785.1, *et seq.* ("CCRAA"), or other similar state or federal laws, related to or arising from the alleged facts and other claims asserted in, or that could have been asserted in, the operative First Amended Complaint; [and]

- any and all claims for declaratory relief, injunctive relief, restitution, and/or fraudulent business practices brought pursuant to the California Business & Professions Code § 17200 and related to or arising from the alleged facts and other claims asserted in, or that could have been asserted in the operative First Amended Complaint

(Doc. 32-1 at 32, Settlement § 5.2)

The release for Plaintiff encompasses more claims than the release of Class Members. (*See* Doc. 32-1 at 33-34, Settlement § 5.3) Specifically, Plaintiff's release provides that she releases Defendants "from any and all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, known or unknown, suspected or unsuspected, that the Class

Representative had, now has, or may hereafter claim to have against the Released Parties arising out of, or relating in any way to, the Class Representative's application for employment with Defendants, or otherwise relating to the Defendants or the Released Parties." (*Id.*)

### III. Objections and Opt-Out Procedure

Any Class Member who wishes may file objections or elect not to participate in the Settlement. The Notice of Proposed Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc. 32-1 at 65) In addition, the Notice explains the procedures to object to the Settlement and request exclusion. (*Id.* at 65-67)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I. Legal Standard

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### II. Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed class is comprised of all applicants who applied for employment with Jaco Oil Company; Fastrip Food Stores, Inc.; Fastrip Food Stores of Fresno, Inc.; Fastrip Financial, LP; Instant Storage, LLC, Brooke Utilities, Inc.; and Wholesale Fuels, Inc. and for whom Defendants obtained and/or used a Consumer Report during the relevant time period. (Doc. 32-1 at 20, Settlement § 1.1) Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23, under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a

1  later date." *See Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

2  Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A. Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

#### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, Defendants have "determined that there are 761 Class Members as of the date of [the] Settlement Agreement." (Doc. 32-1 at 37, Settlement § 6.2.1) Therefore, the numerosity requirement is satisfied.

///

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551. In this case, Plaintiff asserts there are common facts in this case, because the class members were "subjected to a uniform background check policy implemented by Defendants," who asked Class Members "fill out a "Credit and Background Check Authorization" form as part of the application process." (Doc. 32 at 28.) Further, Plaintiff asserts there is a common question in the action: "whether these authorizations and uniform policies by which Defendants obtained and used applicants' consumer reports violated the FCRA, ICRAA, and CCRAA." (*Id.*) Accordingly, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Here, Plaintiff alleged that she applied for employment with Defendant Jaco during the relevant time period. (Doc. 32 at 16). Because Plaintiff was subjected to the same polices and application procedure as the Settlement Class Members, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the

representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

### a. *Proposed class representative*

Plaintiff seeks appointment as the Class Representative of the Settlement Class, and asserts that she has "always maintained the best interest of the Class while performing [her] Class Representative duties." (Doc. 32-2 at 6, DeSantos Decl. ¶ 13) Further, the parties do not report that there any conflicts between Plaintiff and the putative class members. Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

### b. *Proposed class counsel*

Shanberg, Stafford & Bartz LLP seek appointment as counsel for the settlement class. Proposed Class Counsel report that they "are experienced in litigating class action cases and in serving as class counsel." (Doc. 32 at 29, citing Stafford Decl. ¶¶28-30) Further, Plaintiff reports, "There are no known personal affiliations or familial relationships between the plaintiff and proposed class counsel." (*Id.*) Defendants do not oppose the appointment or assert Plaintiff's counsel are inadequate to represent the interest of the class. Therefore, the Court finds the lawyers at Shanberg, Stafford & Bartz LLP satisfy the adequacy requirements.

**B.    Certification of a Class under Rule 23(b)(3)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts that certification of the Class is appropriate under Rule 23(b)(3) which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." According to Plaintiff, "the predominance requirement is satisfied because all the liability issues in this case can be determined based on common evidence." (Doc. 32 at 29) In addition, Plaintiff asserts that "the superiority requirement is met because

there are approximately 705 class members who most likely have no interest in individually pursuing their claims."[2] (*Id.*)  Therefore, the Court finds certification of the conditional settlement class is proper under Rule 23(b)(3).

### III. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291 (internal quotations and citation omitted).

#### A. Strength of Plaintiffs' Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989)).

According to Plaintiff, "Defendants background check policy facially violated the FCRA, ICRAA, and CCRAA by unlawfully using authorization forms that failed to comply with each of the statutes' disclosure requirements and that Defendants failed to properly notify applicants of adverse

---

[2] As noted above, Defendants now believe there are 761 Class Members. (Doc. 32-1 at 37, Settlement § 6.2.1)

[3] Because there is not a government participant in this action, this factor does not weigh in the Court's analysis.

actions after Defendants obtained and used the applicants' consumer reports." (Doc. 32 at 31-32) However, Plaintiff acknowledges that Defendants may be able to assert the violations were not willful, "making it challenging for Plaintiff to prove ultimate liability." (*Id.* at 32) Given the challenge identified by Plaintiff, this factor weighs in favor of preliminary approval of the Settlement.

### B. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the proposed settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages. Plaintiff contends that "[her] claims, much of which rest on a showing of technical violations, have faced judicial resistance in some courts." (Doc. 32 at 34, citing, e.g., *Syed v. M-I LLC,* 2014 U.S. Dist. LEXIS 150748 at *8 (E.D. Cal. Oct. 22, 2014) On the other hand, the proposed settlement provides for immediate recovery for the class. Thus, this factor weighs in favor of approval of the Settlement.

### C. Risk of Maintaining Class Status throughout the Trial

Plaintiff asserts "the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond." (Doc. 32 at 33) Further, she asserts: "Even if Plaintiff was to prevail in certification, the costs for both parties would increase and Plaintiff would face 'substantial risk of incurring the expense of a trial without any recovery.'" (*Id.*, quoting *In re Toys "R" Us- Dec., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) Due to the risk to the claims of class members, this factor supports approval of the Settlement.

### D. Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, Plaintiff asserts "the proposed recovery for Settlement Class Members ($50 for Group I

members and $350-$375 for Group II members) is substantial." (*Id.* at 35) She explains: "For those Class Members receiving $50, that represents 50% of the potential $100 recovery. [Citations] And for those Class Members in Group II, who will receive $350-$375, the recovery is substantially better than many other settlements that have been approved in similar FCRA cases recently." (*Id.*, internal citations omitted). Plaintiff believes this supports approval of the settlement, because "without actual injury, it is unlikely that the class members would receive maximum statutory damages for the conduct at issue." (Doc. 32 at 34, citation omitted). Accordingly, the Court finds the amount offered in settlement supports approval of the settlement agreement.

### E. Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that "the parties engaged in discovery, including special interrogatories and requests for production of documents." (Doc. 32 at 37) She asserts, "Class Counsel reviewed hundreds of pages of documents produced by Defendants and interviewed and investigated the claims of approximately 20 putative class members during this litigation." (*Id.*, citing Stafford Decl. ¶¶ 36-37) Given the discovery completed by the parties prior to mediation, appears that the parties made informed decisions, which lead to resolution of the matter. Therfore, this factor supports preliminary approval of the Settlement.

### F. Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Here, "Class Counsel is of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Joint Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay and the defenses asserted by Defendants." (Doc. 32 at 38) Similarly, Defendants indicated in the Settlement that they believe it "is fair, adequate, and reasonable," and a "good faith compromise of the claims raised in the Litigation, based upon their assessment of the mutual risks and costs of further litigation." (Doc. 32-1 at 45, Settlement § 9) Accordingly, the views of both Class Counsel and Defendants' counsel support approval of the Settlement.

///

### G. Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement. (Doc. 32 at 5, De Santos Decl. ¶ 12) However, because Class Members have not yet received notice, this factor shall be revisited during and after the hearing for final approval of the Settlement.

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiff notes that the parties here "negotiate[d] through a private mediator, which . . . supports the reasonableness and non-collusive nature of the settlement." (Doc. 32 at 37, citing *Lusby v. Gamestop Inc.,* 297 F.R.D. 400, 413 (N.D. Cal. 2013); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov.21, 2012); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011). The Ninth Circuit has determined the "presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Because there is no indication the agreement was the product of collusive conduct, this factor weighs in favor of approval of the Settlement.

### I. Attorneys' Fees

Class counsel has requested attorneys' fees up to 33 1/3% of the gross settlement fund, for a total of $100,000. (Doc. 32 at 43) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent on the action. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### J. Class Representative Enhancement

The Settlement provides that Plaintiff may seek an enhancement payment "up to $5,000." (Doc. 32-1 at 27, Settlement § 3.3) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement explains that the enhancement is to be given to Plaintiff "to compensate her for her time and efforts spent in serving as the Class Representative." (Doc. 32-1 at 27, Settlement § 3.3) Plaintiff reports that she "assisted my attorneys with preparing the Initial Disclosures to Defendants by compiling a list of potential witnesses and documents in this case." (Doc. 32-2 at 4, DeSantos Decl. ¶ 7) Plaintiff also assisted "with reviewing discovery responses received from Defendant Jaco;" engaged in multiple telephonic conference with her attorneys "discussing the procedures for mediation, strategy, and potential ways to approach settlement in a case of this nature; and attended the mediation session in Los Angeles. (*Id.* at 5-6, ¶¶ 8-10) In total, Plaintiff estimates that she spent over 40 hours of her time on actions related to this case. (*Id.* at 6, ¶ 13) Given the actions taken on behalf of the class and the flexibility for an award *up to* $5,000, approval of a class representative enhancement is appropriate.

### APPOINTMENT OF THE CLAIMS ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint ILYM Group, Inc. as the Claims Administrator. (Doc. 32-1 at 23, Settlement § 1.21) Under the terms of Settlement, the Claims

Administrator must "perform the notice, claims administration, and distribution functions." (*Id.*) Specifically, the Settlement provides:

> The Claims Administrator shall perform the customary duties of a Claims Administrator including, but not limited to the following: (a) preparing, printing and disseminating the Class Notice and the Request for Exclusion Form; (b) promptly furnishing to Class Counsel and Defense Counsel copies of all objections received; (c) administering the claims, including determining each putative Class Member's status as a member of the Class and verifying the information contained in any objection by a Class Member; (d) calculating and distributing a Class Payment to each Class Member who did not Request Exclusion; (e) handling inquiries from Class Members, and (f) resolving disputes from Class Members... Additionally, the Claims Administrator will handle all tax document preparation and filing, including preparing 1099 forms to be mailed to each Class Member.

(Doc. 32-1 at 35, Settlement § 6.1.1)  ILYM Group estimates the expenses related to its responsibilities will be $13,843.15 (Doc. 32-1 at 99) but Plaintiffs will seek only $12,500 in costs. (Doc. 32 at 43)  Based upon the recommendation and request of the parties, ILYM Group is appointed as the Claims Administrator.

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### I.     Content of the Notice

Plaintiff has submitted the proposed Notice and Exclusion Form (collectively "Notice Packet").  Upon review of the proposed Notice Packet, the Court finds the content is adequate.  It provides information regarding the background of the action and claims asserted.  The Notice explains the terms and provisions of the Settlement, including the payments from the gross settlement fund.

(*See* Doc. 32-1 at 63-65)  In addition, the Notice explains the rights and procedures to receive a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines.  (*Id.* at 65-67)  Finally, the Notice Packet explains the effect of the judgment and settlement.  (*Id.* at 64-65)

## II.     Method and Administration of Notice Packet

Within fifteen days after entry of this Order, Defendants will give the Claims Administrator and Class Counsel the data they possess for each class member, including: "names, last known addresses, telephone number and social security numbers of each Class Member."  (Doc. 32-1 at 37, Settlement §6.2.2)  In addition, Defendants will "identify whether the Class Member was hired or not hired after Defendants obtained the Class Member's Consumer Report."  (*Id.*)

Within ten days of receiving this information, or twenty-five days after the date of service of this Order, the Claims Administrator will mail "the Class Notice and Request for Exclusion Form by bulk first class mail, [with] forwarding requested."  (Doc. 32-1 at 37, Settlement § 6.2.4)  For any Notice Packet returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice Packet.  (*Id.*, § 6.2.5)

Class Members who desire to be excluded from the action "must submit a valid written statement requesting exclusion to the Claims Administrator" within thirty days of the Notice Date.  (Doc. 32-1 at 39, Settlement § 6.6)

Similarly, Class Members who wish to object to the Settlement must mail a written objection to the Claims Administrator within thirty days of the Notice Date.  (Doc. 32-1 at 38, Settlement § 6.3)  "A written objection must contain the objecting person's full name, current address, and include all objections and the reasons therefore, and include any and all supporting papers (including, without limitation, all briefs, written evidence, and declarations)."  (*Id.*)  In addition, if an objector wishes to appear at the hearing for final approval, he or she must include a "statement of intent to appear" in the written objection.  (*Id.*)  Any objections must be filed with the Court at least five days before the scheduled hearing for final approval.  (*Id.* at 39, Settlement § 6.3)

## III.    Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of

the hearing for Final Approval of Class Settlement, and deadlines for returning a request for exclusion form, and any opposition to the Settlement. Likewise, the Claim Form must be modified to include the relevant information.

## **CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

   > All applicants who applied for employment with Jaco Oil Company; Fastrip Food Stores, Inc.; Fastrip Food Stores of Fresno, Inc.; Fastrip Financial, LP; Instant Storage, LLC; Brooke Utilities, Inc.; and/or Wholesale Fuels, Inc. and for whom Defendants obtained and/or used a "Consumer Report" during the "Settlement Period."[4]

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan is **APPROVED**;

4. Linda De Santos is **APPOINTED** the Class Representative for the Settlement Class;

5. The law firm of Shanberg, Stafford & Bartz LLP is **APPOINTED** Class Counsel;

6. ILYM Group, Inc. is **APPOINTED** as the Claims Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

---

[4] The "Settlement Period" has been defined by the parties in § 1.28 of the Settlement. (Doc. 32-1 at 24)

7. The Class Representative enhancement request for Plaintiff is **GRANTED** preliminarily up to the amount of $5,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's request for fees of not to exceed 33 1/3% of the gross settlement amount and costs up to $8,500 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **August 21, 2015**;

10. Costs of settlement administration shall not exceed $12,500;

11. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **July 30, 2015**;

12. Defendants **SHALL** provide the Claims Administrator with the Class Data no later than **August 3, 2015**;

13. The Claims Administrator **SHALL** mail the approved Class Notice Packet no more than **August 13, 2015**;

14. A class member who wishes to be excluded from settlement shall postmark the Request for Exclusion no later than **September 11, 2015**;

15. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to the Claims Administrator no later than **September 11, 2015**;

16. A Final Approval and Fairness Hearing is SET for **September 25, 2015** at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions

and requests, including the class representative enhancement request and motion for attorneys' fees;

17. Class Members may appear at the hearing **September 25, 2015**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

18. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **September 11, 2015**;

19. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

20. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **July 17, 2015**                                      **/s/ Jennifer L. Thurston**
                                                                                UNITED STATES MAGISTRATE JUDGE